Submitted on briefs July 21; reversed September 15, 1931

## MARCHAND *v.* MARCHAND ET AL.

(2 P. (2d) 927)

*Rutenic & Yaden,* of Klamath Falls, for appellants.
*A. L. Leavitt,* of Klamath Falls, for respondent.

CAMPBELL, J. Plaintiff, who is seventy-seven years of age, filed suit for divorce from defendant, who is fifty-six years of age. In her complaint, after alleging jurisdictional facts and that there are no children, she avers as grounds for divorce cruel and inhuman treatment, the particular specification being in effect:

That during the summer of 1923 and up to the time of filing her complaint, it became necessary for her to be an inmate of a hospital on account of her impaired bodily health due to her advanced age; that during all this time the defendant wholly neglected her, evinced no concern in her personal condition or welfare; failed to supply her with necessary clothing or money; neglected to visit her; that during the whole time he only gave her $100; that in September, 1929, she wrote to defendant for money with which to return home but he refused to send her any. She further alleges that, during her absence from her home, defendant consorted with and kept in the home of plaintiff other women and that neighbors saw him take these women on automobile rides and conduct himself in a manner inimical to the marital interest of plaintiff. She further alleges that she and defendant are owners by the entirety of certain real estate and that defendant is owner of certain other real property, some of which stands in the name of a trustee.

She asks for a dissolution of the marriage contract, $50 per month alimony and the usual division of the real estate.

To this complaint defendant filed his answer admitting the jurisdictional facts such as marriage, residence, etc., also admitting the status of the title of the real estate, and denied all the alleged acts of cruelty. For a further and separate answer and defense defendant alleged that during the year 1923 plaintiff was adjudged insane and was confined in the state hospital at Salem and remained there, except for a short time in the summer of 1923, until October, 1929; that she failed to return to her home in Klamath Falls. He further alleges that on November 19, 1923, he was duly appointed guardian of the person and estate of the

plaintiff and ever since has been and is now such guardian. He further alleges that on November 25, 1929, plaintiff filed a petition in the county court of Klamath county for his removal as guardian and she alleged in said petition that a portion of the real estate described in her complaint herein was acquired by said guardian with funds of his ward, and that he be required to account for the same, and that said proceeding is still pending. He then asks that the instant suit be abated and dismissed.

■ The plaintiff thereupon moved to strike the further and separate answer on the grounds that defendant, having answered to the merits, is precluded from joining therewith a plea in abatement.

The court sustained said motion, and the defendant assigns as error the court's ruling thereon:

"Whenever the subject matter of the plea or defense is that the plaintiff cannot maintain any action at any time whatever, present or future, in respect to the supposed cause of action, it may, and usually must be pleaded in bar; but matter which merely defeats the present proceeding and does not show that the plaintiff is forever concluded should in general be pleaded in abatement": 1 Chitty, 16th Ed. 462.

Measured by the foregoing definition, there is nothing in the separate answer and defense that shows that plaintiff cannot at some future time maintain her suit. If she is laboring under the disability of insanity, that disability may be removed either by a complete discharge or by the appointment of a guardian: Oregon Code 1930, § 1-306.

"Defendant may set forth by answer as many counterclaims as he may have, including pleas in abatement." Oregon Code 1930, § 1-611; *Credit Service v. Korn,* 121 Or. 685 (256 P. 1047); *Walker v. Hewitt,* 109 Or. 366 (220 P. 147, 35 A. L. R. 100).

It is true defendant in his prayer asked "that the suit be abated as to the realty described in the answer, and dismissed because plaintiff has not legal capacity to sue."

The writer knows of no procedure by which a suit may be abated as to a part of the relief asked for where all the relief prayed for arises under the one state of facts.

The court erred in striking out defendant's separate answer and defense.

■ The defendant also contends that the evidence is insufficient to constitute cruel and inhuman treatment rendering life burdensome and unbearable. The pleadings aver and the evidence shows that any affliction, mental or physical, that plaintiff may have suffered, was due to her advanced age. According to her own story, she was a voluntary inmate of the state hospital for the insane for all the years from 1922 to 1929. There is neither pleading nor testimony as to how she first became an inmate of that institution. In his brief, her counsel makes the statement that on June 22, 1922, she was committed to it, but also claims that on May 14, 1923, she was formally discharged therefrom, but there is no testimony to that effect.

The first allegation of cruel and inhuman treatment is that due to her advanced age "she experienced impaired bodily health." The defendant was not responsible for that condition. She alleges that while she was an inmate of the hospital he neglected her. The uncontradicted testimony is that during this time he did everything she asked him to do. He visited her but once, but there is nothing in the evidence that she ever requested or even desired him to visit. He wrote her twice every month and answered every letter she wrote him except one and that one, he testifies, did not reach

him. He sent her all the money she asked for except that he did not send her the money she requested to come home on in June, 1929. He testified that he did not have the money, but wrote her that he would send it in the near future.

She also alleges that he consorted with other women. This, of course, was pure hearsay on her part. The strongest evidence regarding other women are the admissions of defendant. He testifies that he had a cousin visit him for about three and one-half months in 1926; that during 1927 and 1928 he had a lady help take care of his house and do some laundry work for him for which he paid in carpenter work. This lady came to the house in the daytime and did not stay there at night. There is not a word of testimony from any witness of any misconduct on the part of any of these parties. Plaintiff seems to think that defendant is trying to dispose of property in which she has an interest as tenant by the entirety, but we cannot assume that the court that has jurisdiction in such matters will permit any waste in that respect. Defendant testifies that he wishes her to occupy the home with him and to care for her, but through erroneous ideas and impressions given to her from someone not connected with the family she declines his offer.

There is abundant testimony in the record that plaintiff was an exceptionally thrifty, hard-working wife and a wonderful helpmate to defendant until she became broken in health.

The record fails to disclose any act on the part of defendant rendering her life burdensome and unbearable. This ground for dissolving the marriage contract is peculiar to each individual case. What may be unbearable to one may actually afford pleasure to an-

other, so that each case must rest on its own particular facts and circumstances, taking into consideration the manner of life as well as the temperament of the parties under consideration. This is why it is necessary to allege and prove not only cruel and inhuman treatment but such a set of facts as makes the life of the complainant burdensome and unbearable.

The testimony fails to substantiate the allegations of cruel and inhuman treatment rendering the life of plaintiff burdensome and unbearable. The decree of the circuit court will be reversed and the cause remanded with instructions to enter a decree dismissing the cause without costs or disbursements to either party.